**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EDUARDO GEOVANI IZARA-JUAREZ,**<br>**Petitioner,**<br><br>v.<br><br>**J.L. JAMISON, TODD BLANCHE,**<br>**MARKWAYNE MULLIN, TODD LYONS,**<br>**BRIAN MCSHANE, THE U.S.**<br>**DEPARTMENT OF HOMELAND**<br>**SECURITY,**<br>**Respondents.** | **CIVIL ACTION**<br><br><br><br>**NO.  26-2817** |

**HODGE, J.**                                                                                      **May 6, 2026**

## MEMORANDUM

Petitioner Eduardo Geovani Izara-Juarez ("Petitioner" or "Mr. Izara-Juarez") is another of

the numerous individuals who, pursuant to the relatively new decision by the Bureau of

Immigration Appeals ("BIA"), has been subjected to mandatory detention without the opportunity

for an individualized hearing under the Immigration and Nationality Act ("INA") § 235, 8 U.S.C.

§ 1225(b)(2). BIA's interpretation of that section would permit it to treat an immigrant who was

not inspected upon arrival in the country "as seeking admission" even if the person arrived in the

country years ago. Such treatment results in detention without any hearing. This Court again joins

with the hundreds of decisions rejecting BIA's analysis, and grants Mr. Izara-Juarez's petition for

a writ of habeas corpus (ECF No. 1 (the "Petition")) and orders his immediate release.[1]

---

[1] The Court may decide the issues raised in the Petition without a hearing, as courts have done in similar recent cases. *See Rodriguez Pereira v. O'Neill*, No. 25-cv-6543, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025); *Gramajo De Leon v. Jamison*, No. 25-cv-7199, 2025 WL 3724604 (E.D. Pa. Dec. 23, 2025).

## I.    PROCEDURAL BACKGROUND[2]

Mr. Izara-Juarez, a native of Guatemala, entered the United States in or around October 20, 2018, and was apprehended and detained at the border on October 22, 2018. (ECF No. 1 at 2, 29.) He was issued a Notice to Appear ("NTA") charging him with being removable pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (*Id.* at 9, 25.) The record indicates that the document was never properly served upon the Executive Office for Immigration Review. (*Id.* at 9.) On or about January 5, 2019, Mr. Izara-Juarez was released from detention as a juvenile arrival into the United States. (*Id.* at 9, 21.) Mr. Izara-Juarez has been present in the United States since that time. (*Id.* at 2.) Petitioner initially settled with his father in the Hyattsville area of Maryland before eventually moving to live with his mother in Delaware. (*Id.* at 10.) On April 27, 2026, Mr. Izara-Juarez was apprehended and detained by U.S. Immigration and Customs Enforcement ("ICE") agents while on his way to work. (*Id.*) He is currently being held at the Federal Detention Center in Philadelphia, Pennsylvania. (*Id.* at 10, 23.)

## II.    LEGAL STANDARD

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States . . . ." The burden is on the petitioner to show that his confinement is unlawful. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

## III.    DISCUSSION

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

Respondents assert that the Petition should be denied because Mr. Izara-Juarez is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2)(A) and his detention does not violate constitutional due process.

### A. Mr. Izara-Juarez Is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b)(2)(A)

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding . . . ." By contrast, 8 U.S.C. § 1226(a) "applies to aliens already present in the United States," *Jennings v. Rodriquez*, 583 U.S. 281, 303 (2018), and provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General "may release" noncitizens on "bond" or "conditional parole," except if they have committed any of the criminal offenses listed in Section 1226(c). 8 U.S.C. § 1226(a).

Reversing course, on July 8, 2025, DHS issued a policy instructing all ICE employees to consider anyone deemed inadmissible under § 1182(a)(6)(A)(i)—*i.e.,* all those who entered the United States without admission or inspection—to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond. This policy was subsequently enshrined in a September 5, 2025 decision by the BIA, which took the position that all non-citizens who are present in the United States without admission are subject to mandatory detention under Section 1225(b) and that an immigration judge has no authority to consider their bond requests. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). Respondents assert that the present case is governed by *Hurtado*. (ECF No. 6 at 4.)

As the Supreme Court has explained, "aliens *already in the country* pending the outcome of removal proceedings" may be detained pursuant to Section 1226(a). *Jennings*, 583 U.S. at 289 (emphasis added). By contrast, Section 1225(b) "applies primarily to aliens seeking entry into the United States." *Id.* at 297. Respondents assert that noncitizens like Petitioner who are already present within the United States are "applicants for admission" within the language of Section 1225(b)(2)(A). (ECF No. 6 at 5–7.) However, as my colleagues have reasoned, if the Court accepts Respondents' argument that Section 1225(b)(2)(A) applies to all "applicant[s] for admission," then there was no need for Congress to specify that Section 1225(b)(2)(A) would apply to "alien[s] seeking admission." *Demirel v. Fed. Det. Ctr. Philadelphia*, No. 25-cv-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025); *see also Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026) ("[T]he government's novel interpretation of the immigration statutes defies their plain text."). This Court must grant "every clause and word of a statute . . . meaning" and render "no clause, sentence, or word . . . superfluous, void, or insignificant." *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). If this Court adopted the Government's reading of Section 1225(b)(2)(A) to apply to "all applicant[s] for admission," it would render the phrase "seeking admission" superfluous. However, the text "seeking admission" is not unnecessary and, thus, shall not be ignored by this Court. Given that Section 1225(b)(2)(A) is inapplicable to Petitioner, the Court finds that Petitioner has been unlawfully detained in violation of the INA.

### B.  Mr. Izara-Juarez's Detention Violates Due Process

The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." The "Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is

lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test outlined in *Mathews v. Eldridge*, which weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the Government's interest, including administrative burdens of additional procedures. 424 U.S. 319, 334 (1976).

All three *Mathews* factors weigh in favor of Mr. Izara-Juarez. In this instance, Mr. Izara-Juarez has a strong private interest in his personal liberty. The failure of the Government to afford him *any* individualized determination regarding whether he posed a danger or flight risk after living in this country for more than seven years, with no criminal record prior to the pending charges, poses a high risk of erroneous deprivation of his rights, while a bond hearing imposes minimal administrative burden. Respondents have set forth no facts suggesting that Mr. Izara-Juarez poses a danger or flight risk. Therefore, the application of the *Mathews* factors and constitutional due process necessitated a bond hearing prior to Mr. Izara-Juarez's detention on April 27, 2026. Because that hearing did not occur, Petitioner should not now be in custody.[3]

## IV.    CONCLUSION

For the aforementioned reasons, Petitioner's detention without a bond hearing contradicts the INA and offends the Due Process Clause of the Fifth Amendment. Therefore, this Court grants Mr. Izara-Juarez's Petition, orders his immediate release, permanently enjoins the Government from re-detaining him under Section 1225(b)(2)(A), and temporarily enjoins the Government from

---

[3] In light of this Court's ruling that Petitioner's habeas petition is granted based on violation of the INA, 8 U.S.C. § 1226(a) (Count II), and violation of the Fifth Amendment Right to Due Process (Count I), this Court declines to address Mr. Izara-Juarez's claim for relief pursuant to violation of bond regulations, 8 C.F.R. 236.1, 1236.1, and 1003.19 (Count III), and the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* (Count IV).

re-detaining him under Section 1226(a) for seven days following his release. An appropriate Order follows.

BY THE COURT:

/s/ Kelley B. Hodge

HODGE, KELLEY B., J.